Good morning. May it please the Court, John F. Libby appearing on behalf of Appellant Joseph Caseres. Unless the Court has questions on the stop issue, I'd like to focus this morning on the unlawful search of Mr. Caseres' car and why it cannot be justified under either the search incident to arrest exception to the Fourth Amendment warrant requirement or under the exception permitting an inventory search when a car is lawfully impounded. Well, I have a question. On that issue, on the detention, at what point do you contend that Caseres was actually seized? I believe he was seized when he submitted to police authority after the foot chase. So it would be after he threatened the officer? I believe it was after the threatening of the officer occurred in the front yard of his home. He then, when police, the police officer pulled out his mace, and threatened to spray Mr. Caseres. Mr. Caseres then went off running, and I believe it was when he then submitted to police authority about two blocks later. That's when the arrest, in fact, took place. Two blocks away? Two blocks away. He may have kind of ran through different streets. Yeah, the Court's finding that this was about a block and a half to two blocks away from his home after the chase is where he was located. Now, the car was lawfully parked at the curb two doors down from his house. At that time, he was handcuffed? He was not handcuffed, Your Honor. He was handcuffed after he submitted to police authority after the foot chase. Well, that's what I mean. How far away from his car was he at the time he was handcuffed? About two blocks, Your Honor. Two blocks. Now, his car was lawfully... And there were two officers came there. You had the lieutenant. Correct. And you had a backup. Right. I believe it was a Harbor police officer who responded to the call, and it was when he showed up that Mr. Caseres actually unsubmitted to the police authority. And that's when he was arrested. That's when he was taken into custody, and he was never brought back to the car or to the house. He was taken straight from there to the police station. But thereafter, police ordered, or police, Lieutenant Murphy, directed one of the officers to instigate a search of Mr. Caseres' car, which was lawfully parked at the curb two doors down from his house. I can't remember. After the traffic... There was a traffic stop. They claimed he didn't signal a turn, I think it was. Wasn't that it? That's what the lieutenant said, yes. Pardon me? That's what Lieutenant Murphy said, yes, that he felt a turn. The police didn't arrest him for the traffic offense. Is that correct? That's correct. And they wanted to talk to him about something? Well, I believe that what Lieutenant Murphy said was he originally approached Mr. Caseres and made first contact with him when Mr. Caseres was already at his home. But that was regarding the traffic stop. That's why he first wanted to talk to Mr. Caseres. And that's when the defendant threw a punch at him? Didn't throw a punch at him. He threatened him. He said, I'm going to kick your fucking ass. And based on that, the police officer believed he had been threatened and said he was going to then arrest him at that point. And then he took off and was arrested when they got him two blocks away. That's right, Your Honor. And you're saying it's not a search incident to the arrest? We're submitting that it cannot be. This court has never addressed... The Supreme Court in Thornton left open the question, how much distance an individual can be from a car when he had been a recent occupant in order to justify the search? I'll forget about the distance for a minute. If the arrest had taken place for the traffic violation at the time, would that have been authority to search the car? If he had been arrested in his front yard when the police first made contact with him, I still believe that that is too far from the car for purposes of the Thornton analysis. Whether or not he was... We submit the proper test should be that the arrestee must be at least within reaching distance of the vehicle at the time of arrest. Well, is there a right to search any time there's an arrest for a misdemeanor like failure to make a right turn? Does that give the police the right to search the car if they want to? Under Belton, if he had been arrested while he was in the car... Not in the car. He's out of the car. Well, if he's out of the car... If he's in the car, does that give the police the right to search under Belton? Under Belton, yes. Okay, yes. Under Belton, if he were in the car at the time of the arrest. Under Thornton, if he has already left the car, then the question becomes, was he temporarily and spatially in proximity to the car at the time of the search? We would submit, because he was two blocks away at the time he was arrested, nowhere near his car, certainly not within reaching distance of the car, which we think is the appropriate bright-line test that can be imposed here. He didn't pose a danger to the officers. There was no danger to destroy evidence or... That's correct, Your Honor. ...since a weapon and all that. That's right. Certainly, he was nowhere near the car in order to be able to lunge into the car, for example, and grab a weapon and destroy evidence. When, at the time, your client made the right turn to go north, where was the police vehicle? The police vehicle was on the northbound street, approximately 50 to 75 feet behind the intersection where Mr. Caceres made his turn. Had the police turned on their siren or their warning lights or anything... Never. ...before the defendant parked his car? No. They were just following him? Correct. So there was no signal that they were pull him over and arrest him... Exactly. ...or ask him about what he was doing? Not at all. There was absolutely no attempt by the police officer to pull Mr. Caceres over. So he parked his car, gets out, starts going up to his house. The police go up and want to talk to him. That's what happened. That's correct. That's correct. Okay, but now he was driving in which direction before he made his turn? He was driving west. He was driving westbound. That's correct. Okay, and then he made a right turn. He was going northbound. Correct. All right, at the time that he made his right turn, where was the police vehicle? 50 to 75 feet behind the intersection on the northbound street that Mr. Caceres was turning onto. I don't get that picture. Was he following? He was not behind Mr. Caceres. They were essentially perpendicular to each other. Mr. Caceres was driving this way and the lieutenant was driving this way. When Mr. Caceres then turned onto the street that the officer was already driving on. And then after the turn, the officer was behind him. The police, unmarked police vehicle, was headed in an eastbound direction? In a northbound direction. He was going, another client was going west, turning south. My client was going west and then turned north. The police officer was already driving north on that street. He was going west and turned north. I mean, I see what you mean. You're okay. I don't understand. He's going west. Because I'm from the east. And where was the police vehicle was going east? It was going north. He was on the street after Mr. Caceres' turn. The police vehicle was then behind him. Before Mr. Caceres' turn. Mr. Caceres was driving this way and the officer was driving this way. So the officer was driving eastbound. Was driving northbound, Your Honor. Well, maybe there's magnetic north and true north. I'm just going by the street designation, Your Honor. But in any event, he certainly was nowhere near, police were, Mr. Caceres was nowhere near his car at the time he was arrested. And police simply did not have a basis. If we're going to apply the typical search incident to our standards that the Supreme Court first developed in Schimel. We got that argument. Okay. With respect to. Let me just ask you, was there any indication that the officers before the search of the car knew that Caceres was on parole or that he had a search condition as a condition to his parole? No, Your Honor. The lieutenant testified that he believed that after he had arrested him at that scene two blocks away from his house. He asked Mr. Caceres if he was on parole. And at that time, Mr. Caceres said he was on parole. He didn't say where he was on parole from, but he answered that question that he was on parole. Certainly not before the stop. He did not know that. With respect to the inventory search, Your Honor. The government maintains that they had authority to impound his vehicle under VILCA code section 2261H1, which permits police to impound a vehicle when an officer arrests any person driving or in control of a vehicle for an alleged offense. Here, Mr. Caceres was neither driving nor in control of his car at the time of the arrest. Therefore, that statute simply did not apply. And there was no statutory basis for the. And it was legally parked and it was not a danger to. That's correct. And the California court of appeal has recently addressed that issue and said there needs to be a community caretaking function read into that statute. And if a car is lawfully parked on the streets, not blocking the driveway, it's not interfering with traffic, then there's no community caretaking function. So here, based on that, because it was lawfully parked, there was absolutely no basis to impound the vehicle, and as such, there was no basis for an inventory   Thank you, Your Honor. Can I stay some time? Yes, I could. Thank you, Your Honor. Good morning. May it please the Court. Sean Nilsen for the United States. This Court may uphold the district court's denial of defendant's motion to suppress on any one of three independent grounds, the search incident to arrest, the inventory search, or a parole search. Each one of those searches in this case was justified. I want to focus at the outset primarily The search incident to arrest, the arrest took place, what, a block and a half away? A block and a half away. The guy was handcuffed? That's true. And there were two police officers there? Yes. So how could that be a search incident to an arrest? Well, as to He was already arrested. Yes. There was no danger of him, you know, he was handcuffed. Was he handcuffed in front or in the rear? I don't know if his cuff, if he was cuffed front or rear. But, Your Honor, I Now, but standard procedure, you cuff him with the hands behind their back, right? That, I believe unless, sometimes when you're going to put them into a car and that becomes uncomfortable, I believe sometimes it's done in the front. But regardless of where his hands were cuffed and regardless of whether he's in danger Well, if his hands were cuffed behind, it would be pretty hard for him to, you know, open the door and get in the car. It wasn't even remotely close. Absolutely, it would be difficult for him to reach a weapon, but I submit But he was, we're talking about the search of the car that's one half to two blocks away as found by the district court. How could he possibly, whether his hands were cuffed or not, two cops have arrested him, how could he possibly get into the compartment of the car? And I submit to Your Honor that under Robinson, where the Supreme Court has discouraged or prohibited this sort of case-by-case analysis of whether there was a danger of the defendant reaching a weapon, was there a danger of defendant destroying evidence, that we don't engage in a case-by-case analysis of whether that's possible. In all of these cases, by the time the search is conducted, the defendant is cuffed because this is search incident to arrest. They all take place after the search. I could see if you were searching around the bushes in the yard where he was arrested. I just don't see going all the way back to the car to search there as a search incident to an arrest for threatening a police officer. Right. And that threatening of the police officer took place a lot closer to the car than the arrest, and what we have here is the defendant fleeing for that block and a half, creating the distance. And defendants shouldn't get kind of a benefit or reward for that. A defendant who comes out of his car, submits to detention near his car, at his car, and is arrested, a search incident to the arrest would reveal contraband in the defendant's car. A defendant such as this one, who takes it upon himself to threaten the police officer with violence, to shake his fist at the police officer, and then flee for a better position than the defendant who submitted to detention closer to the car. Suppose he got away, and they didn't apprehend him until the next day, and the car was still there. Would that still be to say, well, if we got him right away, we could have searched the car, and he doesn't get the benefit of this. The government gets the benefit of searching, whether it's necessary to search or not, without a warrant. No, Your Honor. I don't think in that case he would. And let me explain to you why. Under this circuit's reasoning in McLaughlin, which focused on whether we have a valid search incident to arrest, focused on whether that search took place within a continuing series of events related to the arrest. And in a situation where the defendant gets away, and he's gone, very far gone, well, that's a separate intervening event that occurs to break that continuous series of events. Now, while we're on this question. Let me ask you this question here. So this man, he made a right turn. Yes. Was anything illegal about that? He did not signal for that right turn. And where does it say that he has to signal before he makes a right turn? California Bureau. Did he stop? Yes, he was stopped at the stop sign. Yes. Right? And then he made a right turn. Yes. Okay. Now, read me the provision in the vehicle code that says that he's got to signal that turn. Signal that turn. That's California Vehicle Code Section 22-108, which states, any signal of intention to turn right or left shall be given continuously during the last 100 feet traveled by the vehicle before turning. That doesn't require a signal. It says any signal. It's talking about that particular provision is talking about the duration of the signal if you are required to signal. So which statute is the one that requires you to signal? I submit that that does. And that means when they say any signal, Your Honor, what they mean, there are two types of signals. I think I know where Your Honor is going. But what I submit. You do? I think. Do you think I'm going to the fact that the officer in the district court applied the wrong California statute as the basis for that? No, no. I don't think he did. That's where I'm going. Right. But I'm not going there, hopefully, Your Honor. Hopefully I'm taking us somewhere a little bit different. Okay. Well, then you should read your own line and not mine. I have trouble doing that. I read any signal to refer to other provisions in the California Vehicle Code, particularly 22110 and 22111 that say a signal may be given by the electronic yellow blinker or by hand signal. And what it is saying in that situation is whether you are signaling by the electric blinker or by the hand signal out the door, the right or the left turn, that that signal has to be given for 100 feet. When you're making a right turn. Now, where the defense, I think, is trying to lead us here is they're saying it's really 22107 that governs. I submit that 22107 is significantly different because it says that you shall not make any such movement, and that means a movement right or left upon a roadway only after giving the appropriate signal. These, I think, are just... In the event any other vehicle may be affected by the movement. Yes. And the government submits that that movement, moving right or left upon a roadway, applies to changing lanes. Well, you got any cases that says that? I don't have any cases that say that. Okay. You're looking at a guy who spent a lot of time back in the 60s handling traffic tickets. Right. Okay? So, you know. Now, it says no person shall turn a vehicle from a direct course or move right or left upon a roadway until such movement can be made with reasonable safety, and then only after giving of an appropriate signal in the manner provided in this chapter in the event. That means the same as if. They just saved a few words. If any other vehicle may be affected by the movement. Now, what vehicle was affected by the movement? If that's required, that's Lieutenant Murphy. And I engaged in... Where was Murphy? Lieutenant Murphy was between two and six seconds from entering that intersection, which defendant was stopped 15 feet short of and would have to accelerate through from a stop in less than two or six seconds. Did Murphy signal when he made that left turn? Murphy went straight. Went straight? Yes. So how would he interfere with Murphy? Because he turned in front of Lieutenant Murphy. Lieutenant Murphy is headed for that intersection, and he's going to be in that intersection from two to six seconds from the time that the defendant starts his right turn from 15 feet back. But Murphy has to stop for the stop sign. No, Murphy does not have a stop sign. There's no stop sign on the north-south street there. Oh, there isn't. Only the defendant had a stop sign, and Lieutenant Murphy said he lawfully stopped at the stop sign. If Murphy was behind him, would Murphy have a stop sign? No. Lieutenant Murphy was headed north. Why don't you do a diagram of this? Lieutenant Murphy's headed north, and the defendant is headed west. But before Lieutenant Murphy crosses through this intersection, the defendant turns and heads north. Lieutenant Murphy approaching that intersection doesn't have a stop sign. The defendant stopped here does have a stop sign. And Lieutenant Murphy is between two and six seconds from entering the intersection when the defendant starts his turn. How fast was Murphy going? Between 10 and 15 miles an hour. I did a little bit of math and a footnote in there. It took me back to 15 feet a second. Yeah, that is approximately correct. It's in a footnote in the government's brief. It was a happy trip back to studying physics, which I really enjoyed, and got out of the law for a second. But there is an effect on traffic. And even if there isn't an effect on traffic, Lieutenant Murphy reasonably believed these windows were tinted. There was tint on the windows. We've got cases in California that say you can't stop a person because he's got tinted windows unless you know that those windows were not tinted at the factory. There cannot be additional aftermarket tint placed on those windows? Yeah, yeah. You know there are California cases? I do not know the case on that. The case that I know on that is that. . . I'm an expert on tinted windows, too. I am not. I'm an expert on the case about whether the air freshener can be the blocking of the windshield. But regardless of even whether there is a traffic violation, the defendant wasn't detained until after his separate misdemeanors when he threatened the officer and fled from the officer. And the bottom line, at the end of the day. . . Then he makes his right turn. And then he. . . Nobody signaled him with flashing lights. And then he goes around, and he comes around, and he parks in front of his house. He parks two houses down from his house. Two houses down from his house. Yes. And he doesn't see any police car there. But he did see Lieutenant Murphy. He looked right at Lieutenant Murphy. I know. And then all of a sudden, you know, it's an unmarked car. And then here comes Murphy. You know. And Murphy wanted what? To arrest him? Murphy wanted to cite him for the right turn and the tinted windows violation. Yeah, but he couldn't cite him for the tinted windows violation because it's not a violation. And he probably couldn't cite him for the right turn. He never did cite him. He never did cite him. No, he didn't. And he explained why. And if he had cited him, what would have happened here is the defendant would have had two separate cases chasing him. If he arrests him for the gun, that starts the gun case. If he writes him a separate traffic ticket, that starts a traffic court case. Then if the defendant is in custody on the gun case, he misses his court date for the traffic, the warrant issues. Everything is put into one. It's up to the prosecuting authority, if it were in state court, to make a decision in addition to the gun charge whether to file the additional charge. Well, I mean, they're always looking for business. Why wouldn't it be better to do it that way? As two cases? Yeah. No, Your Honor, I believe it would be better to do it as one case. You resolve everything in one. And it also sets up, I forget, the case law issue. If defendant walks in and pays his traffic ticket, he's got an argument that he took care of all of his conduct from that incident, and thus you're precluded from further prosecution of him for the gun. Oh, well, we've got cases, I'd say, that just laugh at that. Now, at the end of the day here, though, Your Honors, the defendant told Lieutenant Murphy before the search happened, I'm on parole. This was California parole. Did he say I'm under California parole? He did not say California parole. He could have been on parole from Nevada. It's a very reasonable assumption for an LAPD gang officer arresting a gang member from the gang of the area in San Pedro. Well, where does gang come into this? Where does a gang come in? Well, the officer who does he – is the officer reasonable in believing this is California parole? Well, where do you get the gang? I didn't even know he was a gang member. I believe it's in Lieutenant Murphy's declaration. He saw the RSP, Rancho San Pedro, tattoo on the defendant's head. There was a lot of discussion during the hearing about whether he, in fact, saw that tattoo because whether or not the defendant was wearing a hat. But Lieutenant Murphy testified he saw. So are you saying the gang tattoo gave probable cause for the search? No, but it helps Lieutenant Murphy know that he's dealing with a local from San Pedro. It's a very reasonable assumption, which turned out to be true, in fact, that he was on California parole. You know, the thing about this, though, that troubles me, is you've got a lawfully parked car, the guy's two blocks away. If we were to say that was okay, then you could have the police go down into all the lawfully parked cars in the gang area and just start searching them. I don't believe so, Your Honor, because what we had here is you still have to have been a recent occupant of that car for the police to search the car. The police can't just willy-nilly search a car. They're able to search this car because under Thornton, under Ossophy, the defendant So they wait, the person walks out, goes to their home, and they have a gang tattoo, and then they go search the car. The gang tattoo, Your Honor, I'm not using, I'm not asserting that for anything but for Lieutenant Murphy's reasonableness in believing this was California parole, which it, in fact, was. And that's all explained in the PSR, paragraphs 51 to 62. When he looked at the back of his head when he arrested him? As he was walking away from Lieutenant Murphy at the very outset of the encounter. As the defendant is quickly walking away from his car, in a way Lieutenant Murphy recognized to be attempting to distance himself from something in the car. That's when Lieutenant Murphy saw that tattoo. Oh, so when he was walking away from his car? Mm-hmm. This was at night, wasn't it? Yes, it was. Did he have a flashlight on him? No, I assume there were streetlights. So he's walking away. How big was the tattoo? It was large. It was about four inches. It was about that big, about four inches tall. The letters RSP. And so that was visible. But back to Your Honor's point about searching just Not RSVP. No, R. No, I did that when I sent back my acknowledgment of argument. No, RSP, Rancho San Pedro. But Your Honor's concerned about searching any car. The only cars that can be searched under Thornton are cars of which the defendant was a recent occupant. Yeah, but in all those cases, and in our cases, recent occupant means they're sort of just standing outside the door of the car. That is often the case. And that brings me to Did you have any case where the guy was a block and a half to two blocks away? Not a block and a half away, Your Honor, but there are And that brings me to my last point, and I appreciate the additional time. And then, unless you have any other questions No, no, it's all right. We're having a good time. Thank you. I am too. The defense listed a lot of cases about the circuit split and the jurisdiction split about whether you've got to be within the wingspan at the time that you're detained. I broke those down slightly differently, whether those cases were post-Thornton or pre-Thornton. Pre-Thornton, there is a very wide split. Post-Thornton, the split is much more on the side of there's no such wingspan rule. The one case of defendants that was cited that's post-Thornton that applied this was Washington v. Rathbun, the intermediate appellate court of the state of Washington. Penman v. Kentucky, Kentucky Supreme Court, the defendant fled a block. Black v. State, Indiana Supreme Court, the officers follow the defendant, much like in this case, but don't get to lights and siren. The defendant gets out of his car and gets to an auto repair shop before they detain him. U.S. v. Moore from the Middle District of Florida were under the defendant's version of facts. It was 90 feet away. And again, Rainey v. Kentucky, they did not lights and siren. They saw the defendant. He was driving fast. He got out of his car, yelled at his neighbors. They detained him. He turned out to be drunk. They searched the car and found things. He was 50 feet away across the street. And then the Seventh Circuit in U.S. v. Pitman, the defendant was caught a half a block away under a house. Now, none of them does quite get a block and a half away, but the consistent theme in these cases is the continuing series of events. And that's what occurred in this case, the continuing series of events. That's a new standard. Not completely new because I gleaned that from McLaughlin. I can't take credit for creating that in my own head. I wish I could. I wish I was that brilliant. All I'm doing in that is regurgitating what this court said in McLaughlin. I don't think that's a danger of me ever being that brilliant, simply repeating what I read in McLaughlin. So I believe under that standard, it's a lawful search incident to arrest. It's in the continuing series of events. And this is a valid parole search at the end of the day. And unless Your Honors have any more questions, I've abused enough of your time today. All right. Good question. Thank you. Thanks. Your Honor, just wanted to note, you were asked about a map. I have the original defense Exhibit 51. The defense was directed to hold on to the original exhibits. So I have the original map that was presented at the suppression hearing. If the Court would like it, I can turn it over to the Court. It was admitted into evidence at the suppression hearing. Well, does it show where the arrest took place? It does. It was marked up consistent with the testimony. You'll be able to see the various locations of where the turns took place, what the streets are, et cetera. Sure. Why don't you let us have it, and we'll send it back to you. I will do that. Is that okay with the government? Yeah. It was admitted in evidence. Okay. All right. We were just asking. I did want to address what counsel just noted. With respect to the post-Thornton jurisprudence, he noted the Washington State case, which found that 40 to 60 feet away from the car was too far of a distance, post-Thornton. The Arizona Supreme Court this past summer reaffirmed its pre-Thornton jurisprudence in a case called People v. Gantt, 162 P. 2nd. 640. Again, it's pre-Thornton. They had said you can't do it post-Thornton. They just reaffirmed that. I would note if this circuit were to go a different direction,  And that can cause significant problems with respect to how police are supposed to act, whether a case goes to Federal court or to State court. Does it make a difference that McLaughlin was pre-Thornton? Well, McLaughlin, that's interesting. McLaughlin, the continuous series of events standard, that went to temporal proximity, not spatial proximity. This Court has never addressed the five minutes that was used. Exactly. This Court has never addressed the issue of distance. In fact, in the Ossoffi case, the Court had a footnote, footnote 4, which said, you know, because in this case the individual was next to the car, we don't have to address the distance issue now that came up in Thornton, but we will have to do that at some time. This is the case where this Court is going to have to decide what is the appropriate distance that would still qualify an individual as a recent occupant. Okay. Thank you, Your Honor. Thank you. Do you have a question? Okay. We're going to take a recess. All rise. Court is in recess.
judges: Pregerson, Wardlaw, Bright